STEWART v. LANSING. See Case No. 738.

STEWART (LATHROP v.). See Case No. 8,112.

STEWART (LAW v.). See Case No. 8,130.

## Case No. 13,433.

### STEWART et al. v. LOOMIS.[1]

District Court, N. D. New York. July 16, 1842.

BANKRUPTCY—WHAT ARE ACTS OF—PREFERENCES.

[1. The second section of the bankrupt law (5 Stat. 442) declares "that all future payments, securities, conveyances, or transfers of property, or agreements made or given by any bankrupt in contemplation of bankruptcy, and for the purpose of giving any creditor, indorser, surety, or other person any preference or priority over the general creditors of such bankrupt shall be utterly void and a fraud upon this act." Held, that the acts thus designated are in themselves acts of bankruptcy.]

[2. Assuming that the giving of a preference is not an act of bankruptcy, unless it be done voluntarily, and that, as held in England, what is done upon the demand of a creditor is not voluntary, yet the giving of a warranty of attorney to a mere indorser, whereby he secures priority, must be *held* a voluntary act, for such indorser is without legal right or power of coercion.]

[3. The expression, "in contemplation of bankruptcy," is equivalent, or nearly so, to the phrase "in expectation of stopping payment."]

[4. On June 3d a firm gave a warrant of attorney to confess judgment to persons who had indorsed for them, and 10 days later refused to pay their debts. One of the partners testified that the firm considered itself solvent and was in good credit until the 3d of June. *Held*, that the inference was that they did not consider themselves so after that date, and that it was reasonable to hold that the preference was given "in contemplation of bankruptcy."]

In bankruptcy. This was a petition, by John Stewart and others, for a decree of bankruptcy against Thomas and Charles K. Loomis. The petition, which was filed on the 18th of June last, alleges and sets forth that the debtors were partners, and merchants; that they were indebted to the petitioners to the amount of $4,381.66; that on or about the 4th of June last they voluntarily confessed a judgment to Arba Strong, Adams W. Walrath, and Richard Buckminster, for the sum of $8,000, "on bond and warrant of attorney, then and there voluntarily given and made" for that purpose, whereon a judgment was entered without any process or compulsion; that the said Charles K. Loomis, on the same day, in like manner confessed a judgment in favor of Thompson P. Stebbins for the sum of $860; that on the same day Thomas Loomis in like manner confessed two other judgments,—one in favor of Joel Blood and others, for $12,000, and the other in favor of Marcellus K. Stone for $800,—all which judgments were entered and docketed on the same day; that, as the petitioners are informed and believe, the said judgments were thus given and confessed on the pretense that the said persons named as judgment creditors were creditors or sureties of the said Thomas and Charles Loomis, and in order fraudulently to give the

[1] [Not previously reported.]

said persons, respectively, a preference and priority over the petitioners and other creditors, and to deprive them of the means and power of collecting their claims until all the said judgment creditors should be satisfied; that, as the petitioners are informed and believe, these judgments were confessed by the debtors in contemplation of bankruptcy, and for the purpose of giving a preference to the judgment creditors named, over the general creditors of the debtors; that such judgment creditors, with the knowledge and voluntary consent of the debtors, had sued out executions on the said judgments, although 30 days had not then elapsed after the entry of the judgments, and that a levy had been made on the property of the debtors in virtue of such executions. The petitioners therefore pray for a decree of bankruptcy against the said Thomas and Charles K. Loomis.

The debtors filed separate answers to the petition, stating, in substance, that in the summer and fall of 1841, they had applied to the said Arba Strong and his coplaintiffs, above referred to, to become their indorsers, and obtained their assent to do so "under the express agreement and promise" of the respondents to keep them at all times abundantly secured for all such indorsements; that in the winter of 1841–42, the said Strong and others were frequently called on to indorse for the respondents, which they did, upon reiterated promise and assurance that they should receive abundant and satisfactory security by bond and warrant of attorney, and any other security they might devise, and that upon this condition they became their indorsers for the amount of about $4,150; that in pursuance of their said promise and agreement, and of the requirements of the said indorsers, they did execute to the said Strong and others the bond and warrant of attorney described in the petition, whereon execution had been issued as alleged in the petition, and all their said partnership effects seized, and their store shut. A similar account was given to the other judgments mentioned in the petition. The other material facts stated in the answers are sufficiently noticed in the opinion of the court.

Bronson & Myers, for petitioning creditors. J. A. Spencer and Mr. Bagley, for debtors.

CONKLING, District Judge. I understand it to be distinctly admitted by the counsel for the debtors that the acts charged against them in the petition are sufficient, if true, to bring them within the act. This relieves me from the necessity of noticing some points involved in the case, which it might otherwise be proper to discuss, for the purpose of vindicating the conclusion at which I have arrived. One of the judgments complained of, viz. that for $8,000 in favor of Strong, Walrath, and Buckminster, was confessed by the two debtors jointly, and it is unnecessary to inquire what would have been the effect, in this proceeding against them both, of the separate judgments, independently considered, because the circumstances attending the confession of each of the judgments were essentially the same. The second section of the bankrupt act [5 Stat. 442] declares "that all future payments, securities, conveyances, or transfers of property, or agreements made or given by any bankrupt in contemplation of bankruptcy, and for the purpose of giving any creditor, indorser, surety, or other person any preference or priority over the general creditors of such bankrupt shall be utterly void and a fraud upon this act." Adhering to the construction which I have heretofore given to this enactment, I shall assume that the acts therein designated are in themselves acts of bankruptcy. That the execution by the debtors of the bond and warrant of attorney to their indorsers, Strong and others, was for the purpose of giving them a preference over the general creditors, is distinctly avowed. But in giving a construction to a similar provision in the bankrupt laws of England, the English courts have uniformly held that, in order to render a preference unlawful, it was necessary that it should appear to have been given voluntarily, and that, in general, a mere application on the part of a creditor for payment or security was sufficient to give validity to the act of preference. But it is to be remarked that the persons to whom the preference was given in this case were not creditors, but indorsers. They, therefore, were without any legal right or power of coercion, and of this the respondents cannot be supposed to have been ignorant. They could not, therefore, have acted under any apprehension of legal process, and in that respect must have acted voluntarily. This distinction between a preference to a creditor and surety was recognized in the case of Thompson v. Freeman, 1 Term R. 155. In that case a warrant of attorney to confess a judgment had been given by the bankrupt, at a time when she knew herself to be in a state of insolvency, to the defendant, who was her surety in a bond; and the question was whether the judgment was valid. There was evidence tending to show that, in giving the warrant of attorney, the bankrupt acted under the false apprehension that the defendant was taking means to enforce his demands. It was left to the jury to consider whether this was so, and they found a verdict for the defendant. Upon a motion for a new trial, Lord Mansfield, C. J., said: "A bankrupt, when in contemplation of his bankruptcy, cannot by his voluntary act favor any one creditor; but if, under fear of legal process, he give a preference, it is evident that he does not do it voluntarily. And though the defendant in this case had taken no steps to secure himself in case he was called upon, yet the bankrupt, acting from mistake, was acting under the same apprehensions of legal process as if the defendant had actually threatened her; so that her executing the

warrant of attorney was not a voluntary act, but the effect of fear, however groundless that might be." On this ground a new trial was refused.

The remaining inquiry is whether this security and preference is to be considered as. having been given "in contemplation of bankruptcy." This is a phrase borrowed from the laws of England, and it is reasonable to suppose that it was intended by the legislature to be used in the same legal sense that it bears in that country. But, unfortunately, even there its signification does not appear to have been defined with perfect accuracy. I shall venture at present to consider this equivalent, or nearly so, to the phrase "in expectation of stopping payment." Did these debtors entertain such an expectation when they gave the bond and warrant of attorney? This is charged by the petitioning creditors to have been done on or about the 4th of June last. The charge, as circumstantially set forth in the petition, is met by general denial in the answers of the debtors, and this denial is followed by what purports to be a narrative of the circumstances which led to the giving of the security in question, and an admission of the execution of the bond and warrant, for the purpose and to the amount charged. without stating the date of the transaction. It is very clear, however, that it could not have been long before the time charged, and from the manner of the denial and the circumstances of the case, it is, I think, to be assumed that it was done very near that time, and probably on the 3d of June. On the 13th of June, but a few days after, on being called upon by one of the petitioning creditors in behalf of his firm for payment or security, C. K. Loomis, one of the respondents, said he would consult his partner and take counsel on the subject; and shortly after he declined a compliance with the creditor's demand. It is stated, also, in the answer of C. K. Loomis, that the firm considered itself solvent, and was in good credit, until the 3d of June. From this statement the inference is nearly irresistible that they did not so consider themselves afterwards. Upon the whole, therefore, I am of opinion that the preference may reasonably be supposed to have been given in contemplation of bankruptcy.

But the respondents are further charged with having fraudulently, in contemplation of bankruptcy, and for the purpose of giving preference, etc., "voluntarily suffered executions to be issued" on the judgments confessed by them, and their property, real or personal to be levied upon, in virtue thereof, before the lapse of 30 days from the entry of the judgments. In response to this charge, the debtor admits that, pending the application to them by the petitioning creditors for payment or security, the plaintiffs in the judgments confessed, becoming alarmed. immediately caused all the property of the firm to be levied on. and their store to be shut up by the sheriff. Who communicated to the plaintiffs the information which occasioned their alarm, or whether the respondents had any active agency in causing execution to be taken out, does not expressly appear. But their silence upon these points, their admitted anxiety to secure the plaintiffs, and the fact that the plaintiffs had not right to take out execution and make a levy at the time they did, and the acquiescence of the respondents in these illegal acts. which resulted in putting a stop to their business as traders.—are circumstances tending strongly to support this second charge. Upon the whole. therefore. I feel constrained to grant the decree of bankruptcy prayed for. My refusal to grant it would by the act be final, while under this decision, the debtors have a right to demand a trial by jury, whereby they may have a further opportunity to explain the transactions complained of, and repel the inferences I have drawn from their answers. if these inferences are not warranted by the truth of the case.

In conclusion, it is proper to add. that my decision by no means infers any actual, intentional fraud on the part of these gentlemen. Their desire to fulfil their engagements to their indorsers was natural. and. in a moral point of view. may be admitted to have been commendable. But the leading policy of the bankrupt act is to secure equality among the creditors of failing debtors in the distribution of their effects. The acts of these debtors are in contravention of this policy, and therefore bring them within the law. Independently of the bankrupt act. the confession of these judgments would have been legal. and was probably supposed to be so, notwithstanding this law. A decree of bankruptcy must be granted.